Appellants Blackmon and McWilliams were tried together in the Circuit Court of Mobile County. Both men were convicted of rape in the first degree, sodomy in the first degree, and robbery in the first degree.
In the early morning hours of September 17, 1983, Deputy Alton Neidhart of the Mobile County Sheriff's Department was dispatched to the Mauvilla area to investigate a possible robbery. Once at the scene of the reported robbery, Deputy Neidhart heard what sounded like muffled screams emanating from a nearby wooded area. He took the search light from the squad car and shined it through the trees. A few moments later a woman came running toward the police car. The deputy stated that the woman was crying and that her clothing was torn. The woman told Deputy Neidhart that she had been raped.
According to the victim, she and a friend were taking a ride in her new automobile when the car became stuck in the mud. Since her friend had passed out, she decided to go telephone for help. As she was walking down the road, the victim was stopped by four black males. Upon learning of her difficulty, the men offered to get her car out of the mud if she would pay them ten dollars. She agreed, and, accompanied by the four men, returned to her car. After their efforts to get the car out of the mud proved unsuccessful, one of them then told the victim that ten dollars was not enough. The men then took $40 from her purse and told her that they "wanted her body." The victim testified that one man with pigtails pulled out a knife and started pushing her down the road. Another black male wearing white pants followed, while the other two remained at the car with the victim's friend. After being forced to the ground, the victim was ordered to remove her pants and underwear. The victim testified that, against her will, the man wearing white pants penetrated her rectum with his penis. Once he had finished, the men pulled the victim further into the woods. A moment later, the other two men joined them. They said that the victim's friend had escaped. She testified that these two men then forced her to have sexual intercourse with them. Once they had finished, the man with pigtails also compelled her to have sexual intercourse with him and then forced her to perform oral sex. Immediately afterwards, the victim stated that she saw a spotlight being shined through the woods. The man with pigtails leapt to his feet and fled. The other three had already left. The prosecutrix said that she put her pants back on and ran to the police. Based upon the description given by the victim, the police subsequently arrested and charged the appellants.
The appellants' account of the incident differs substantially from that of the prosecutrix. Both men denied having sex with her. Appellant McWilliams admitted that he was one of the men who had offered to help her but insisted that he had left when their efforts to get the car unstuck proved unsuccessful. A police officer who saw McWilliams on the night of the rape stated *Page 1024 
that McWilliams was wearing very white pants.
In a signed statement given to the police shortly after the alleged rape, appellant Blackmon also admitted to being one of the men who offered to get the victim's car out of the mud. Blackmon, who testified she consented to having sex, stated that he was present while the other two men had sex with her, but he denied that he himself had sex with her.
 A I
Appellant Blackmon raises five issues on appeal. By pro se brief, he first contends that the trial court erred in denying his motion to sever his case from that of the other defendants. Relying on the authority of Bruton v. United States,391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), Appellant Blackmon asserts that his Sixth Amendment right to confront his accuser was violated by the introduction of a non-testifying co-defendant's extrajudicial statement inculpating him in the rape. The statement objected to by appellant Blackmon is as follows:
 "Christover McWilliams said that he was there with three others when she came by; he went with the other three and her up to the car to help her get out, but after they could not, after they made an unseccessful [sic] attempt to get her out, that he left."
The above statement makes Blackmon part of the group of four, places him at the scene, but makes no direct reference to Blackmon. Even had the statement specifically referred to him, any error would have been harmless in light of the appellant's own admission that he was one of the men who attempted to remove the victim's car from the mud. Holsemback v. State,443 So.2d 1371 (Ala.Cr.App. 1983). The record indicates that McWilliams testified at trial and was subject to cross-examination by appellant Blackmon. There is simply no basis for the appellant's contention that he was denied his Sixth Amendment right to confront his accuser. Bruton, supra;Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222
(1971).
 II
The appellant also contends that the state failed to establish a sufficient chain of custody with respect to the "rape kit." In particular, the appellant alleges that the integrity of the rape kit was not accounted for during the time it was in Dr. Willis's possession until the time it was given to Officer Hill.
The record indicates that the victim was taken to the hospital soon after the rape occurred. Samples of various secretions were taken from the victim's body by the examining physician, Dr. Willis, and placed in the containers that were part of the rape kit. Dr. Willis testified that after he put these samples in the rape kit, the kit was immediately sealed and placed in a "secured refrigerated area." Later that day, Officer Hill picked up the kit at the hospital. He testified that the kit, which was identified by a label with the victim's name on it, was sealed.
 "The purpose of establishing a chain of custody in a criminal proceeding is to show a reasonable probability that the evidence has not been tampered with. [Citations omitted.] The chain need not be proven to an absolute certainty, but only to a reasonable probability." Gwin v. State, 425 So.2d 500, 508 (Ala.Cr.App. 1982), writ quashed, 425 So.2d 510 (Ala. 1983).
This court held in McIntosh v. State, 443 So.2d 1275
(Ala.Cr.App. 1983), rev'd on other grounds, 443 So.2d 1283
(Ala. 1983), that a hospital procedure similar to the one used here, in which a specimen taken from a rape victim was sealed and thereafter placed in an area in which only hospital personnel had access established a reasonable probability that the specimen had not been substituted or altered. The procedure used in the present case was also sufficient. A review of the record gives us no reason to suspect tampering or substituting. There was no break in the chain of *Page 1025 
custody which would warrant exclusion of the stated exhibit.
 III
The appellant also maintains that the photographic array was unduly suggestive. His assertion is based partially upon the fact that the photographs of himself and co-defendant McWilliams had blue backgrounds, while the background in the other pictures was beige.
Whether a photographic lineup is impermissibly suggestive must be determined by examining the totality of the circumstances in each individual case. Fitchard v. State,424 So.2d 674 (Ala.Cr.App. 1982). Here, the prosecutrix was shown several photographs depicting young black males. A small frame was placed around each photograph to cover up the differences in backgrounds. From these photographs the prosecutrix identified Blackmon as one of the men who had raped her. The victim failed to identify co-defendant McWilliams as one of the rapists, even though his photograph also had a blue background. Given these circumstances it is apparent the victim was not relying on the blue background on the pictures. The photographic array as presented was not impermissibly suggestive.
Blackmon also argues that the photographic lineup was unduly suggestive because he was the only person in the lineup who had his hair in pigtails. The victim stated that she was able to remember one of the rapists because "he had his hair plaited in three plaits that night." When asked whether she remembered what this particular assailant was wearing, the victim replied, "I don't know, sir, what he had on, all I remember was the three pigtails that he had."
Minor differences in physical appearance among the subjects of a photographic array does not necessarily render the lineup unduly suggestive. Jones v. State, 439 So.2d 824, 825
(Ala.Cr.App. 1983); Tate v. State, 346 So.2d 515 (Ala.Cr.App. 1977). While the unusual hairstyle of Blackmon was noticeable, photographic array identification cannot be ruled out as a correct police identification procedure for that reason alone, nor its results excluded. The fact that one suspect has a distinctive appearance is not the fault of the police. If, for example, a man with no ears committed a crime, the police would not be required to find others with no ears in order to conduct a lineup. The array may be "necessarily suggestive," but still not be "unnecessarily suggestive" as is condemned in Caver v.State, 537 F.2d 1333, 1336 (5th Cir. 1976), cert. denied,430 U.S. 910, 97 S.Ct. 1183, 51 L.Ed.2d 587 (1977).
Even if the pre-trial identification procedure were found unnecessarily suggestive, reversible error did not occur here.
 "`[T]he required inquiry is two-pronged. The first question is whether the initial identification procedure was `unnecessarily' [Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)] or `impermissibly' [Simmons v. U.S., 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)] suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to have been `unnecessarily,' or `impermissibly' suggestive was so `conducive to irreparable mistaken identification' [Stovall] or had such a tendency `to give rise to a very substantial likelihood of irreparable misidentification' [Simmons] that allowing the witness to make an in-court identification would be a denial of due process. United States ex rel. Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir. 1970).'" Raines v. State, 428 So.2d 206 (Ala.Cr.App. 1983).
The rationale for disallowing an in-court identification is that a witness's in-court identification will be based upon pretrial identification at a lineup rather than upon the witness's perception of the culprit at the time of the crime.United States v. Reid, 517 F.2d 953 (2d Cir. 1975). No such danger existed here, however, since no in-court identification was made by the victim. When asked during trial whether she could identify appellant Blackmon as one of the *Page 1026 
men who raped her, the prosecutrix replied, "He's about the same size, but I couldn't swear to it that it was him." Appellant's argument that the suggestive photographic array created a substantial likelihood of irreparable misidentification must be rejected.
 IV
Blackmon next alleges that the prosecution purposefully used the state's peremptory challenges to systematically exclude black people from service on petit juries.[1]
 "The Constitution does not require `an examination of the prosecutor's reason for the exercise of his challenge in any given case.' Swain, 380 U.S. at 221, 85 S.Ct. at 836. The fact that a district attorney used all of his strikes to exclude blacks from the jury venire does not constitute proof that there was a systematic exclusion of blacks, McCray v. State, 395 So.2d 1057, 1059-60 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 1062 (Ala. 1981); Carpenter v. State, 404 So.2d 89, 95 (Ala.Cr.App. 1980), cert. quashed, 404 So.2d 100 (Ala. 1981); Watts v. State, 53 Ala. App. 518, 301 So.2d 280 (1974). A presumption exists that the prosecutor is using his challenges to obtain a fair and impartial jury. This presumption is not overcome merely by showing that he used all his strikes to remove blacks from the jury. Swain, supra." Walker v. State, 428 So.2d 139 (Ala.Cr.App. 1982).
In Swain v. State, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759
(1965), the United States Supreme Court recognized that such a practice would constitute a violation of the equal protection clause of the Fourteenth Amendment. The court also held, however, that the defendant bears the burden in establishing the systematic exclusion of blacks. Swain, 380 U.S. at 222,85 S.Ct. at 836. To succeed in his challenge, the appellant must prove that the attorney who prosecuted his case intentionally and systematically excluded blacks for purely racial reasons over a substantial period of time and that he did so in the instant case.
 "The exclusion must have occurred `in case after case, whatever the circumstances, whatever the crime and whoever the defendant may be.' Swain, 380 U.S. at 223, 85 S.Ct. at 837. Petitioner is not required to show that the prosecutor always struck every black venireman offered to him, [United States v.] Pearson, 448 F.2d [1207] at 1217 [5th Cir. (1971)], but the facts must manifestly show an intent on the part of the prosecutor to disenfranchise blacks from traverse juries in criminal trials in his circuit, `to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population.' Swain, 380 U.S. at 224, 83 S.Ct. at 838. The prosecutor's use of peremptory challenges in only a few trials is clearly insufficient to state a prima facie case, [footnote omitted] as would be a pattern of exclusion which occurred for only a few weeks."
Willis v. Zant, 720 F.2d 1212, 1220 (11th Cir. 1983).
The evidence offered at trial by the appellant, covered the prosecutor's use of peremptory strikes in seven trials. Evidence from seven trials does not constitute sufficient historical proof to overcome the presumption of propriety and to raise an inference of systematic discrimination. Rose v.Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979).
 V
Finally, appellant Blackmon contends that he was denied effective assistance of counsel because his court appointed attorney filed an "Anders brief." The brief submitted by able counsel for appellant is in compliance with the standards enunciated in Anders v. California, 386 U.S. 738,87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Having examined the record and finding no error prejudicial to the appellant, we believe *Page 1027 
that his counsel acted properly and agree with his conclusion that the record contains no reversible error. We note that there was a hearing in Blackmon's case on the question of consolidation for trial, which appears to comply with Rule 15.4 (b), Alabama Temporary Rules of Criminal Procedure.
 B I
Appellant McWilliams also raises several issues on appeal. He first questions whether the trial court complied with the procedural requirements of Rule 15.4 (b), Alabama Temporary Rules of Criminal Procedure. Rule 15.4 (b), which governs the consolidation of defendants, provides:
 "CONSOLIDATION. If defendants are charged in separate indictments, informations, or complaints, the court, on its own initiative or on motion of any party, may, no later than seven (7) days prior to trial, order that the defendants be joined for the purposes of trial if the defendants could have been joined in a single indictment, information, or complaint. Proceedings thereafter shall be the same as if the prosecution initially had been under a single indictment, information, or complaint. However, the court shall not order that the defendants be tried together without first providing the defendants and the prosecutor an opportunity to be heard." [Emphasis supplied.]
The appellant argues that the requirements of Rule 15.4 (b) were not satisfied because the record does not reveal whether the appellant was given an opportunity to be heard prior to the trial court's order to consolidate. The Alabama Supreme Court in Ex parte Jones, 473 So.2d 545 (Ala. 1985), speaking through Justice Embry, stated:
 "The rule is mandatory when stating `the court shall not order that the defendants be tried together without first providing the defendants and the prosecutor an opportunity to be heard.' . . . Affording an opportunity to move for severance after
consolidation fails to cure the prejudicial error resulting from violation of the rule. [Emphasis by Justice Embry.]
 "As asserted by petitioners, they have a right to effective assistance of counsel at all critical stages of the proceedings against them. Amendment VI, Const. of U.S. Every lawyer experienced in representing persons charged with crimes knows it to be crucial to defense strategy and tactics that he is aware of whether his client is to be tried alone or with another.
 "We today hold that the purpose of Rule 15.4 (b), Alabama Temporary Rules of Criminal Procedure, can only be served by strict compliance with it."
In the instant case, the record is silent as to whether the appellant and his attorney were afforded the opportunity to be heard on the issue of consolidation before the trial court's order that the appellant be tried with the other two defendants. Accordingly, we have no choice and do hereby remand this cause to the trial court with directions to make a finding of fact on the issue of whether the appellant, while represented by counsel, was given an opportunity to be heard on the issue of consolidation at some time before the motion to consolidate was granted, to make a record of such proceeding, and forward it to us.
Because appellant McWilliams's other claims of error will remain justiciable in the event that the requirement of Rule 15.4 (b), Alabama Temporary Rules of Criminal Procedure, are found to have been complied with, we choose, for reasons of judicial economy, to address the remaining issues at this time.
 II
Appellant McWilliams contends that the introduction of co-defendant Blackmon's extrajudicial statement at the joint trial denied him his Sixth Amendment right of confrontation as set out in Bruton v. United States, 391 U.S. 123,88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), just as Blackmon argued with regard to McWilliams's statement. The United States Supreme Court held in Bruton that admission of a co-defendant's confession that implicated the defendant at a joint trial constituted prejudicial *Page 1028 
error, even though the trial court gave clear, concise, and understandable instructions that the confession could only be used against the co-defendant and must be disregarded with respect to the defendant.
Before Blackmon's extrajudicial statement was offered into evidence, the court ordered that McWilliams's name and all references to him, as well as to the other defendants, be taken out of the statement. One of the defense attorneys remarked during his closing argument that Blackmon had made a statement concerning "Chris, Chuck, and Boone," but such a reference is not cause for reversal under the facts of this case. "A defendant's right to confront his accuser is infringed by the admissibility of a statement against his codefendant only if the out-of-court statement directly implicates him." UnitedStates v. Satterfield, 743 F.2d 827, 849 (11th Cir. 1984). "Consequently, for the Bruton rule to apply, the challenged statements must be clearly inculpatory." United States v.Follette, 430 F.2d 1055, 1057 (2d Cir. 1970). "[W]here the context may permit an inculpatory inference, but does not compel it, no Bruton violation exists." English v. UnitedStates, 620 F.2d 150, 153 (7th Cir. 1980). Here, the statement did not directly inculpate appellant McWilliams in the rape, just as McWilliams's statement did not directly inculpate Blackmon. According to Blackmon's written statement, only two of the men had sex with the victim. Furthermore, Blackmon stated that the victim had consented to having sexual relations with these men. The statement does not constitute the "incriminating extrajudicial statement," which the Bruton rule was designed to guard against. Bruton, 391 U.S. at 126. Consequently, we find no error in the trial court's denial of appellant's motion for severance.
 III
Appellant McWilliams also argues that the state failed to show a proper chain of custody with respect to the rape kit. We have already addressed this contention in our review of appellant Blackmon's case, and have held that the chain of custody was sufficiently established.
 IV
We have reviewed McWilliams's remaining contention regarding the trial court's denial of his motion for directed verdict of acquittal and find that it was properly denied.
AFFIRMED AS TO BLACKMON; AFFIRMED IN PART, REMANDED WITH DIRECTIONS AS TO McWILLIAMS.
All the Judges concur.
[1] A similar issue is presently pending before the United States Supreme Court in Batson v. Commonwealth, [Ms. 84-SC-733-MR, Dec. 20, 1984] cert. granted, ___ U.S. ___, 105 S.Ct. 2111,85 L.Ed.2d 476 (1985).