741 So.2d 1099 (1997)
Robert David MERRILL
v.
STATE.
CR-93-1054.
Court of Criminal Appeals of Alabama.
March 21, 1997.
Opinion on Return to Remand November 20, 1998.
*1102 Cecilee R. Beasley, Dennis Wayne Jacobs, Richard S. Jaffe, and Stephen A. Strickland, Birmingham, for appellant.
Bill Pryor, atty. gen., Arthur F. Patterson, Jr., deputy atty. gen., and Stephen N. Dodd, asst. atty. gen., for appellee.
McMILLAN, Judge.
The appellant, Robert David Merrill, was indicted for capital murder in the death of Darius Welch, see § 13A-5-40(a)(18), Code of Alabama 1975 (makes capital murder committed by firing or otherwise using a deadly weapon from a vehicle). He also was indicted on a charge of attempted murder in the shooting of Demetrius Cotchery. The cases were consolidated for trial, and the appellant subsequently was found guilty of both offenses. The jury recommended that he be sentenced to death on the capital charge, by a vote of 11-1. Following a separate sentencing hearing, the trial court sentenced the appellant to death by electrocution. The court also sentenced him to 99 years' imprisonment on the attempted murder conviction and ordered that that sentence run concurrently with the sentence on the capital charge.
The State's evidence at trial tended to show that, at approximately 11:00 p.m. on Friday, August 21, 1992, Darius Welch was walking toward his house in the 4000 block of 24th Street North in Birmingham. He was accompanied by his son Darrell, who was riding a bicycle. A black pickup truck with a camper on the bed came around the corner and Darrell said he heard someone in the truck yell, "Hey, nigger." Two shots were fired, and Darrell then saw his father lying on the ground. The State medical examiner testified that Darius Welch died from a shotgun wound to his lower right chest.
The evidence relating to the attempted murder charge was admitted through the testimony of the court reporter. The court reporter, over objection, read into evidence the testimony given at the preliminary hearing by State's witness Demetrius Cotchery, who did not testify at the appellant's trial. Cotchery stated that, on August 23, 1992, at approximately 4:00 a.m., he was walking in the 2500 block of 16th Street North in Birmingham. A light-colored truck pulled up and stopped, and the driver yelled something. Cotchery said that the back window of the truck then opened and he saw a shotgun barrel emerge. Five shots were fired, two of which struck him. Three police officers testified that they were engaged in a vehicle stop in the vicinity when they heard shots. Two of the officers pursued a light or cream-colored truck down 16th Street and stopped the vehicle. The appellant was inside, in the passenger seat. The police found three spent shotgun shells on the floorboard and a shotgun belonging to the appellant behind the seat. It was subsequently *1103 determined that two shell casings recovered from the scene of the shooting had been fired from the shotgun.
Police detective Steve Corvin took a statement from the appellant shortly after the shooting of Cotchery, at approximately 6:01 a.m. The appellant said that he and his friend Danny Wolfe had left a racetrack and were "just looking foryou know, maybe a good fight or something" when "the black guy ... shot us the bird." He and the man "cussed each other a couple of times" and the appellant then fired his shotgun, which he said was loaded with birdshot, at the man. The appellant told Corvin that he did not like blacks and that "[i]t's niggers on drugs and s___ is bothering us." A short time later, at approximately 6:58 a.m., Detective Corvin took a second statement from the appellant, in which the appellant said that he did not know anything about the Friday night shooting of Darius Welch. On the following day, August 24, the detective took a third statement from the appellant. This time, the appellant told Corvin that he, Jeff McKenna, and Kaye Edwards went to 41st Street in North Birmingham on the night of Friday, August 21, because they wanted to scare some blacks. He said that they saw two black people on bicycles, that he shot "right at" one and "high at" the other, and that he was surprised to learn that he had hit one of them. The defense called a single witness at trial, a police officer who testified that he had seen the appellant at a local racetrack at approximately 11:00 p.m. on the night Welch was killed and that the appellant appeared to be intoxicated at that time.
The appellant presents 16 issues. However, the record is not sufficient to provide a proper review on appeal, as will be discussed below.

I.
The appellant's first claim is that the trial court erred both procedurally and substantively in consolidating the capital murder case and the attempted murder case for trial and that he was prejudiced as a result of the consolidation. With regard to the alleged procedural error, he argues that the trial court consolidated his cases for trial without first providing him an opportunity to be heard. He further argues that he had no opportunity to file a motion to sever the offenses because there is nothing in the record with regard to when the order of consolidation was entered and he was tried immediately after he was arraigned.
Rule 13.3(c), Ala.R.Crim.P., provides that offenses or defendants charged in separate indictments may be tried together if they could have been joined in a single indictment, information, or complaint; however, the trial court "shall not order that the offenses or the defendants, as the case may be, be tried together without first providing the defendant or defendants and the prosecutor an opportunity to be heard." In the present case, the appellant was charged in separate indictments with capital murder and attempted murder. The State's motion to consolidate was filed on March 8, 1993, and the appellant was arraigned immediately before trial on May 24, 1993. There is nothing in the record to indicate when the motion to consolidate was granted.
In Blackmon v. State, 487 So.2d 1022, 1027 (Ala.Cr.App.1986), this Court considered whether the procedural requirements of Rule 15.4(b), Ala.R.Crim.P.(Temp.), the predecessor of the present Rule 13.3, Ala. R.Crim.P., had been satisfied in consolidating the cases of Blackmon and two other defendants for trial.[1] The case was remanded because the record was silent as to the issue "whether the appellant, while represented by counsel, was given an opportunity to be heard on the issue of consolidation at some time before the motion to consolidate was granted." Quoting the *1104 Alabama Supreme Court in Ex parte Jones, 473 So.2d 545 (Ala.1985), this Court stated that "[a]ffording an opportunity to move for severance after consolidation fails to cure the prejudicial error resulting from violation of the rule.... [T]he purpose of Rule 15.4(b), Alabama Temporary Rules of Criminal Procedure, can only be served by strict compliance with it." (Emphasis original.) See Goodman v. State, 611 So.2d 446 (Ala.Cr.App.1992) (holding that the defendant was denied an opportunity to respond where, without notice to the defendant, a motion to consolidate was filed and granted on the same day); see also Holladay v. State, 545 So.2d 213 (Ala. Cr.App.1989) (holding that error in consolidating indictments could not be rendered harmless where the defendant was not present at the consolidation hearing and was denied an opportunity to be heard).
Because the record in the present case is deficient, this Court is unable to determine whether the appellant was given an opportunity to be heard before the trial court issued its order consolidating the offenses. Therefore, this cause must be remanded to the trial court for a finding of fact on that issue. See Robinson v. State, 686 So.2d 522 (Ala.Cr.App.1996).

II.
The appellant contends, and the State agrees, that the trial court erred in imposing the death penalty without a written sentencing order outlining the findings of facts as to the aggravating and mitigating circumstances. Section § 13A-5-47(d), Code of Alabama 1975, provides:
"Based upon the evidence presented at trial, the evidence presented during the sentence hearing, and the presentence investigation report and any evidence submitted in connection with it, the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5-49, each mitigating circumstance enumerated in Section 13A-5-51, and any additional mitigating circumstances offered pursuant to Section 13A-5-52. The trial court shall also enter written findings of facts summarizing the crime and the defendant's participation in it."
In Murry v. State, 562 So.2d 1348 (Ala. Cr.App.1988), this Court held that, due to the absence of the specific written findings required by § 13A-5-47(d), remand of the trial court's sentencing order was required. In the present case, as in Murry v. State, this Court cannot properly review the sentencing decision of the trial court without the required written findings.
Therefore, this cause is due to be, and it is hereby, remanded to the trial court. On remand, the court should determine whether the appellant and his counsel had an opportunity to be heard on the issue of consolidation before the entry of the court's order. The court's written findings of fact and conclusions of law should be forwarded to this court, along with the record of any proceedings held as to this matter. In addition, the court should enter a sentencing order in compliance with § 13A-5-47(d), Code of Alabama 1975, containing specific written findings concerning the existence or nonexistence of each aggravating circumstance and mitigating circumstance, as well as written findings of facts summarizing the crime and the appellant's participation in it. A return should be filed with this Court within 60 days after the release of this opinion.
REMANDED WITH INSTRUCTIONS.
All judges concur.

On Return to Remand
McMILLAN, Judge.
This cause was remanded to the trial court with instructions to enter a sentencing order in compliance with § 13A-5-47(d), Ala.Code 1975, specifying any aggravating circumstances and mitigating circumstances and setting out written findings of fact. The appellant, Robert David Merrill, had been found guilty of capital *1105 murder in the death of Darius Welch, see § 13A-5-40(a)(18), Ala.Code 1975 (makes capital a murder committed by firing a deadly weapon from a vehicle) and was sentenced to death by electrocution. The trial court also was instructed to determine whether the appellant and his counsel had an opportunity to be heard before the appellant's cases were consolidated for trial. The capital murder case was tried jointly with a case charging attempted murder. The appellant was also found guilty of the attempted murder.
The trial court has now filed its return, a summary of which is set out in Parts I and II of the opinion. The remainder of the 16 issues presented in the appellant's original brief are set out in Parts III through IX.

I.
Section 13A-5-53(a), Ala.Code 1975, requires this Court, when reviewing a death penalty case, to determine whether the trial court's findings concerning the aggravating circumstances and the mitigating circumstances were supported by the evidence. The trial court's return states that none of the aggravating circumstances set out in § 13A-5-49, Ala.Code 1975, was present. Those findings are supported by the record on appeal. The return also states that "the act itself" was an aggravating circumstance in the present case.[1] That finding is erroneous.
Section 13A-5-49, Ala.Code 1975, sets out eight aggravating circumstances. The aggravating circumstances in § 13A-5-49(4) list the commission of particular acts or offenses that also make the offense a capital offense, i.e., it is an aggravating circumstance if the murder is committed during a rape, robbery, burglary, or kidnapping. The offense with which the appellant was charged, murder by the use of a deadly weapon fired from a vehicle, is not among the offenses specified in subsection (4). Criminal statutes must be strictly construed in favor of the accused, especially in a death penalty case. Penal statutes are to reach no further in meaning than their words. Berard v. State, 402 So.2d 1044 (Ala.Cr.App.1980). "[T]he act itself" therefore cannot be an aggravating circumstance in the present case.
Section 13A-5-45(f), Ala.Code 1975, provides that, unless at least one of the aggravating circumstances in § 13A-5-49 exists, the defendant's sentence shall be life imprisonment without parole. Therefore, the appellant's sentence of death must be vacated and a sentence of life imprisonment without parole imposed. Cf. Hadley v. State, 575 So.2d 145 (Ala.Cr. App.1990). The appellant raises various claims related to the imposition of a sentence of death in Issues 3, 11, 12, 13, 14, and 15 of his original brief to this court. Our holding renders those claims moot.

II.
In issues 1 and 16 of his original brief, the appellant challenged the trial court's consolidation of the offenses. He first argued that the trial court had violated his right to a fair trial both procedurally and substantively by consolidating the capital murder case and the attempted murder case. In addition, he argued that cumulative errors the court committed in the consolidation deprived him of a fair trial.
The appellant's procedural claim was that he had no opportunity to be heard before the cases were consolidated and no opportunity to file a motion to sever following consolidation.[2] The trial court's return on this issue reflects that, *1106 on remand, two evidentiary hearings were conducted. At the first hearing, the prosecutor stated:
"I recall us specifically having a consolidation hearing with the defendant present. It was right after I had filed in open court my motion for consolidation which I served on the defense attorney...."
"... [T]here was a two- or three-week delay from the time I filed it until we had the hearing in court. And I recall the hearing before the judge with [the appellant] present, [the appellant's counsel] present and I [was] present and [the counsel's] objecting to the consolidation as not being sufficient plan, scheme, modus operandi...."
The appellant's trial counsel then testified that he believed that he first found out that the cases had been consolidated on the morning of trial and "raised Cain in front of the Court" because of it. Trial counsel's recollection was not supported by the record on appeal, which reflected only the following comment from the appellant's counsel on the day of trial:[3]
"It all goes back to the fact you are trying a capital murder and attempted murder case together. We're talking about now and objecting to the fact that you don't even have the victim present."
The trial judge noted that the motion for consolidation had been filed by the prosecutor in open court on March 8, 1993. At the second hearing, the judge concluded that the cases had in fact been properly joined. He stated that he did not believe the parties had come into court unaware of the consolidation and that he believed that the absence of information on the summary action sheet about the consolidation was a "purely clerical" error.
The trial court's finding is supported by the record on appeal. The appellant had an opportunity to be heard on consolidation between the filing of the State's motion on March 8 and the hearing two or three weeks later at which the court issued its ruling. He then had an opportunity to move for severance between the order of consolidation and the commencement of his trial on May 24, 1993. Because he failed to raise at any time the issue of his alleged lack of opportunity to challenge consolidation, this Court cannot consider that argument on appeal. This Court's review is limited to the evidence presented to, and the arguments considered by, the trial court. Eastland v. State, 677 So.2d 1275 (Ala.Cr.App.1996).
The appellant's substantive claim was that the two offenses were not sufficiently similar to be joined (Rule 3.3(a)(1), Ala. R.Crim.P.) and that compelling prejudice resulted from their consolidation. However, under Rule 13.4, Ala.R.Crim.P., the appellant was required to timely file a motion for severance or waive his right to move for severance. As we have said, the appellant did not file such a motion.
In addition, the appellant's sole ground for objecting to consolidation at trial apparently was that the offenses were not part of a plan, scheme, or modus operandi. See Rule 13.3(a)(3), Ala.R.Crim.P., which permits the joinder of offenses that are part of a common scheme or plan. The appellant's objection on that ground was insufficient to preserve the ground that he now argues on appealthat the offenses are not of the same or similar character. Because the appellant's claims of improper consolidation cannot be considered, his claim of cumulative errors associated with that consolidation must also fail.

*1107 III.
In his discussion of issues 6 and 10 of his original brief to this court, the appellant contended that the trial court's failure to give limiting instructions with regard to certain evidence introduced at trial constitutes "plain error." He made no objection at trial to the failure to give these instructions. Rule 45A, Ala.R.App.P., requires this Court to notice plain error in cases in which the death penalty has been imposed; however, as determined in Part I of this opinion, the death penalty cannot be imposed in this case. Therefore, because the appellant's sixth and tenth claims were not preserved, they cannot be considered by this Court on appeal.

IV.
The appellant contended in his discussion in issue 2 of his appellate brief that § 13A-5-40(a)(18), Ala.Code 1975, was unconstitutionally vague. He argued that the statute failed to specify whether the vehicle must be operable or being driven and also failed to state whether the victim may be an occupant of the vehicle or must be outside the vehicle. In addition, he argued that the statute is vague in requiring the weapon to be "fired" from a vehicle.[4]
The appellant's argument is inapplicable to the facts of this case. The State's evidence established that the victim, Darius Welch, was walking on 24th Street North when he was struck by shots fired by the appellant, who was inside a passing pickup truck. As applied to the appellant, § 13A-5-40(a)(18) clearly was not vague.
The appellant presented in his discussion of issue 3 of his brief two additional claims that § 13A-5-40(a)(18), Ala.Code 1975, was unconstitutional.[5] He first argued that the shooting of Darius Welch was not the type of act envisioned by the legislature when it enacted the act that was subsequently codified as § 13A-5-40(a)(18) because it did not present a great risk of death to many persons, which is generally associated with gang violence and drive-by shootings. He also argued that the statute was unconstitutional as applied because the testimony and evidence indicated that the shooting was evidence of reckless conduct rather than intentional conduct.
However, the language of § 13A-5-40(a)(18) is not limited to gang violence or drive-by shootings, and evidence of great risk of death to many persons is not required for a violation of the statute. See § 13A-5-49(3), Ala.Code 1975, which defines a great risk of death to many persons as an aggravating circumstance to capital murder. With regard to the issue of mental culpability, the appellant's statement to Officer Steve Corvin that he shot at both Darius and Darrell Welch, "right at one and high at the other one," evidenced his intent. The appellant's claims of unconstitutionality therefore must fail.

V.
The appellant contended in issue 4 of his appellate brief that the trial court denied him the right to a fair and impartial jury by refusing to allow him to individually voir dire the members as to potential racial prejudice. He also argued that the trial court erred by "limiting and interfering with" his voir dire examination.
The conduct of the voir dire examination of the jury venire is a matter within the discretion of the trial court, even in a capital case. Bell v. State, 475 So.2d 601 (Ala.Cr.App.1984), aff'd, 475 So.2d 609 (Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985). Here, the trial court did not deny individual *1108 voir dire but instead asked the appellant to establish a "threshold necessity" for individual questioning before conducting it. After the appellant had questioned the venire, the judge asked if there was a request for an individual voir dire. The appellant then responded, "No, sir." The appellant has failed to demonstrate any possible prejudice.
With regard to the second argument, the trial court instructed the appellant to address a question concerning outrage over racially motivated crime to all the potential jurors, rather than only to the black jurors. The judge noted that the assumption should be that all jurors would evaluate the case independently of race, rather than that either blacks or whites would judge the case based on race. The appellant rephrased his question and asked if anyone had been inflamed by the racial overtones of the case. The transcript reflects no response to his question. Based on the record, there is no evidence that the procedures followed by the trial court were an abuse of discretion.

VI.
The appellant contended in his discussion of issue 5 of his brief to this court that the trial court erred in allowing into evidence three statements he made to Detective Steve Corvin that were not, he said, knowing, intelligent, or voluntary. He argued that intoxication, lack of sleep, and a mental abnormality affected his ability to understand his Miranda rights and negated his making a knowing and intelligent voluntary waiver.
However, Detective Corvin testified that, in his opinion, although the appellant had been drinking, he was not intoxicated. Moreover, unless the accused is intoxicated to the extent of mania, intoxication affects the weight and credibility of a statement rather than its admissibility. Callahan v. State, 557 So.2d 1292 (Ala.Cr. App.), aff'd, 557 So.2d 1311 (Ala.1989). Detective Corvin testified that all three of the appellant's statements were completed within an hour and within a few hours after his arrest. The only evidence of a mental abnormality was the testimony of the appellant's sister that the appellant exhibited a low level of reading comprehension. Corvin testified that all relevant information, including the advice concerning his Miranda rights and waiver, had been read to the appellant. Based on the record, there is no evidence that the appellant was so incapacitated as to render his statements inadmissible.

VII.
The appellant contended in issue 7 of his brief to this court that the trial court erred in admitting into evidence a statement that Demetrius Cotchery, the victim of the attempted murder, made to Officer Roger Kimbrough. The appellant argued that the statement was inadmissible hearsay because Cotchery made the statement in response to a question, which gave him time to reflect upon his answer, several minutes after the shooting occurred. The appellant also argued that the statement was in "direct conflict" with Cotchery's preliminary hearing testimony and that its admission violated his right to confrontation and to cross-examination.
An out-of-court statement can be admitted as an exception to the hearsay rule if the proponent is able to show safeguards that indicate its reliability and trustworthiness. McElroy's Alabama Evidence § 242.01 (4th ed.1991). One such exception is a statement concerning a startling occurrence that is made soon after the occurrence, while the speaker is under the stress of a nervous excitement created by the event. Id. § 265.01(1).
In the present case, Officer Kimbrough testified that, just after he heard five shotgun blasts, the victim came out of some bushes and collapsed, bleeding, in front of him. The officer called the paramedics and then got down next to the victim. He said that, in an effort to keep *1109 the victim conscious, he asked his name, who had shot him, and where he lived. He said that only a minute to a minute and a half elapsed between the gunshots and his conversation with the victim.
When a statement is given in response to a question, the issue is not whether it is a response but whether the answer is within the res gestae of the offense and whether the answer required reflection. Guntharp v. State, 54 Ala.App. 363, 308 So.2d 722 (1974), cert. denied, 293 Ala. 756, 308 So.2d 728 (1975). Here, the officer testified that the victim made the statement in the course of the officer's attempts to keep him conscious after he was shot. There is no evidence that reflection was required for the victim to answer. Based on the record, the trial court was within its discretion in admitting the victim's statement into evidence.
Moreover, there was no conflict between the victim's statement to Officer Kimbrough and his testimony at the preliminary hearing. Cotchery told the officer that he was shot by "two white males in a white truck." He testified at the preliminary hearing that he knew that there were "at least" two people in the truck when the shots were fired because the driver had stuck "his" head out and was still visible when the gun barrel came out of the back window. Cotchery said he saw only the hand of the second person. In light of the similarity of the two statements, the appellant's opportunity to question the victim at the preliminary hearing, and evidence that Cotchery's statement to Officer Kimbrough was reliable, the appellant was not prejudiced by his inability to further cross-examine and confront the victim concerning his statement to the officer.

VIII.
In his discussion at issue 8 of his original brief to this court, the appellant contended that the trial court erred in denying his motion for a mistrial because the prosecutor's closing argument referred to "possible future criminal activity" by the appellant. He argued that an implication that the appellant "would commit acts of violence every night for the rest of his life" was improper and prejudicial.
The first comments to which the appellant objected were the following:
"There are a few things I would like to say in response to that. He shot and killed Mr. Welch but he'd been drinking and didn't mean to, so excuse me, ladies and gentlemen.
"What does he do the next night? He goes out and does it again. But that's all right, he'd been drinking, so excuse me. I didn't mean to.
"Then the next night, and the next night, and every night and every night for the rest of his life he goes out and does it"
The appellant made the following objection:
"He is going intothere's no evidence that he did it at any other time other than the two times before this Court. He's talking about the next night and the next night and the next night. And we object to that and move for a mistrial. It is inflammatory and he's trying to inflame this jury."
The trial judge overruled the appellant's motion and cautioned the jury that "what these lawyers say is not evidence. Decide this case based on what you heard." The prosecutor, apparently construing the appellant's objection to address an incorrect statement as to the evidence, then offered the following explanation:
"There is no evidence that [the appellant] did it after the third night and that wasn't what I was saying. I think all of you are smart enough to figure that out."
He then continued his argument as follows:
"What I'm saying to you is that he has said to you `Excuse me, I was drunk.' So if he wants to do it every night for *1110 the rest of his life and get up here and says `Excuse me, I didn't mean to, I was drunk,' that's the same as he is asking you here.
"Tell Mr. Welch [the murder victim] that. Tell Mr. Welch it's all right. He'd been drinking and he didn't mean to, Mr. Welch. The fact that you are dead doesn't mean a hill of beans."
The appellant again objected and moved for a mistrial, on the ground that "[h]e's saying you tell Mr. Welch that." The trial court overruled the appellant's motion.
A defendant must state grounds of objection and all grounds not specified are waived on appeal. Reeves v. State, 456 So.2d 1156 (Ala.Cr.App.1984). Here, the appellant's first objection was unclear, and any prejudice caused by the prosecutor's remarks was cured by the trial court's instructions. Ivery v. State, 686 So.2d 495, 510 (Ala.Cr.App.1996). The appellant's second objection failed to raise this ground at all. Appellate review is limited to rulings invoked at the trial level. Cross v. State, 536 So.2d 155 (Ala.Cr.App. 1988).

IX.
The appellant contended in issue 9 of his brief to this court that the trial court violated his right to confrontation by allowing into evidence the preliminary hearing testimony of Demetrius Cotchery, the victim in the attempted murder case. He argued that the State failed to prove that Cotchery was unavailable for trial and failed to conduct a diligent search for him. He also argued that his cross-examination of Cotchery at the hearing was hampered because the burden of proof differed from the burden of proof at trial and hearsay was admissible at the hearing; he further argues that Cotchery did not identify his assailants, and the defense was unaware of Cotchery's criminal history at the time of the hearing and so was unable to impeach his testimony.
An exception to the confrontation requirement is when a witness is unavailable for trial and he has given testimony at a previous judicial proceeding against the same defendant, at which proceeding he was subject to cross-examination by that defendant. Rouse v. State, 548 So.2d 643, 645 (Ala.Cr.App.1989), citing Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). A witness is not unavailable for the purposes of this exception unless prosecutorial authorities have made a good-faith effort to obtain the witness's presence at trial. Rouse v. State, supra.
In the present case, Detective Steve Corvin testified that he had been unable to locate Cotchery even though a subpoena, a warrant, and a writ had been issued for the witness. Cotchery's mother testified that he had not lived with her for about a month and that she did not know where he was. An investigator testified that he had checked with Cotchery's family, the police, local utilities, and local post offices and had not been able to learn the witness's whereabouts.
With regard to cross-examination, the transcript of the preliminary hearing revealed that Cotchery had been subjected to thorough questioning by the appellant's counsel. Based on the record, the trial court did not abuse its discretion by admitting into evidence the preliminary hearing testimony of Demetrius Cotchery.
For the foregoing reasons, the appellant's conviction of capital murder hereby is affirmed. Pursuant to § 13A-5-53(d)(3), Ala.Code 1975, the death penalty imposed by the trial court is set aside. This cause is remanded to the trial court, with instructions to resentence the appellant to life imprisonment without parole.
AFFIRMED AS TO CONVICTION; SENTENCE OF DEATH VACATED; *1111 AND REMANDED FOR RESENTENCING.[*]
LONG, P.J., and COBB, BROWN, and BASCHAB, JJ., concur.
NOTES
[1] The temporary rule contained an opportunity-to-be-heard requirement that was essentially identical to the requirement contained in Rule 13.3.
[1] The court found no statutory or nonstatutory mitigating circumstances and failed to set out the findings of facts specified in the remand order.
[2] The appellant also argued that his arraignment on the day of trial deprived him of the 7-day period provided in Rule 13.3, Ala. R.Crim.P., to file a motion to sever. This argument cannot be considered because the appellant failed to raise it at trial. See Cole v. State, 721 So.2d 255 (Ala.Cr.App.1998).
[3] The appellant also failed to raise this issue in his motion for a new trial, which challenged the consolidation only on the ground that the cases involved "entirely separate and distinct offenses."
[4] Section 13A-5-40(a)(18) classifies the following as a capital offense: "Murder committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle."
[5] The appellant's challenge to the constitutionality of his death sentence was discussed in Part I of this opinion.
[*] Note from the reporter of decisions: On March 26, 1999, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On April 30, 1999, that court denied rehearing, no opinion. On August 20, 1999, the Supreme Court denied the State's certiorari petition, without opinion (1981281). On October 15, 1999, the Supreme Court denied the defendant's certiorari petition, without opinion (1981319).