802 So.2d 265 (2000)
Ricky HUNTER
v.
STATE.
CR-98-1417.
Court of Criminal Appeals of Alabama.
December 1, 2000.
*266 John Scott Waddell, Birmingham, for appellant.
Bill Pryor, atty. gen., and Joseph G.L. Marston III, asst. atty. gen., for appellee.

On Application for Rehearing
FRY, Judge.
This Court's opinion of September 29, 2000, is withdrawn, and the following opinion is substituted therefor.
The appellant, Ricky Hunter, was convicted of second-degree assault, a violation *267 of § 13A-6-21, Ala.Code 1975, and of first-degree robbery, a violation of § 13A-8-41, Ala.Code 1975. For the assault conviction, he was sentenced to 10 years' imprisonment. For the robbery conviction, he was sentenced to 25 years' imprisonment.
The State's evidence established the following. Darius Gamble, the victim, testified that, on the evening of January 7, 1997, he and a friend, Derrick,[1] went to a nightclub in Birmingham. Gamble stated that he and Derrick met Derrick's cousin at the nightclub, and that they left the nightclub in Derrick's car and began driving to the cousin's house. Testimony indicated that Derrick was driving, that Gamble was sitting in the front passenger's seat, and that the cousin was sitting in the rear passenger's seat. According to Gamble, while they were still in the parking lot of the nightclub, two men in a white Chevrolet Camaro automobile told Derrick to follow them. Gamble testified that Derrick followed the white car and then stopped at a gasoline service station to fill his car with gasoline. Gamble stated that the white car drove away, and that Derrick decided not to follow it. Gamble further stated that, after Derrick paid for the gasoline, Derrick drove through a neighborhood and parked in front of a house. According to Gamble, the two men in the white car they had been following earlier parked behind them, but they were in a different car. Gamble testified that the two men got out of their car, and that Derrick and his cousin stepped out of their car, and that the four of them engaged in a discussion. Gamble stated that, because he did not know why the two men had followed them to the house, he did not get out of the car; he remained sitting in the front passenger's seat. Additionally, Gamble indicated that he did not hear their conversation. According to Gamble, he saw Derrick run away from the group, and then one of the men, whom he later identified as Hunter, ran up to the passenger's side of the car, demanded money, and hit him over the head with a gun.[2] Gamble testified that he handed Hunter $120 in cash and that Hunter demanded that he give him more money, that he hit him over the head several times with the gun, and that he told him he was going to kill him. Testimony indicated that he handed Hunter his wallet, and that, as Hunter continued to beat him, Gamble reached into his jacket and pulled out his own gun. According to Gamble, when Hunter saw the gun, he ran away, and, as he was running, he fired several shots toward Derrick's car. Testimony indicated that Gamble ran to a neighbor's house for help. Gamble stated that he was hospitalized after the incident and that he received approximately 20 stitches to his head.
Over defense counsel's objection and after lengthy arguments to the trial court, the prosecution was allowed to call Anne Crawford to the stand. Crawford testified that, on December 22, 1996, she, her husband, her two children, and her mother were visiting her father's gravesite at Elmwood Cemetery. Crawford stated that Hunter approached them holding a gun and demanded her husband's wallet and keys. According to Crawford, after her husband gave Hunter the keys and his wallet, Hunter drove away in their car. Testimony indicated that Hunter had not been convicted of that robbery at the time of trial in this case.

*268 I.
Hunter contends that, in allowing Anne Crawford to testify, the trial court erred in permitting the prosecution to elicit testimony concerning a prior bad act. Specifically, he argues that his right to a fair trial was violated and that the testimony was inadmissible pursuant to Rule 404(b), Ala. R.Evid., because, he says, Anne Crawford should not have been permitted to testify about the cemetery robbery.
In Ex parte Drinkard, 777 So.2d 295 (Ala.2000), the Alabama Supreme Court stated:
"This Court has held that the exclusionary rule prevents the State from using evidence of a defendant's prior bad acts to prove the defendant's bad character and, thereby, protects the defendant's right to a fair trial. See Ex parte Cofer, 440 So.2d 1121, 1123 (Ala. 1983).
"`Evidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant. It interjects a collateral issue into the case which may divert the minds of the jurors from the main issue. Kilpatrick v. State, 51 Ala.App. 352, 285 So.2d 516 (1973), cert. denied, 291 Ala. 628, 285 So.2d 525 (1973). Therefore the admission of such evidence constitutes reversible error. Hinton v. State, 280 Ala. 48, 189 So.2d 849 (1966).'

"Ex parte Cofer, 440 So.2d at 1124."
777 So.2d at 302 (holding that evidence that the defendant had participated in a collateral burglary was prejudicial and should not have been admitted during the guilt phase of the defendant's capital murder trial).
Rule 404(b), Ala.R.Evid., states:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it tends to introduce at trial."
According to C. Gamble, McElroy's Alabama Evidence, § 69.01(5) (5th ed.1996):
"There now exist some crimes in the prosecution of which the intent exception is no longer viable as a means of admitting the accused's collateral misconduct over against the general exclusionary rule. Whenever the prerequisite intent may be inferred from the nature of the criminal act itself, evidence of other crimes is inadmissible if offered to prove such intent. Characterized in terms of traditional evidence analysis, this is an example of the system's exclusion of relevant evidence offered on a material issue. Such can perhaps best be explained as an example of excluding evidence because prejudicial impact, particularly in light of its being unnecessary, substantially outweighs probative value."
(Footnotes omitted.)
In Brewer v. State, 440 So.2d 1155 (Ala. Crim.App.1983), this Court addressed the issue whether a prior uncharged assault was admissible to prove intent in a murder case. This Court stated:
"Although the trial judge allowed the evidence to prove the appellant's intent, and the State argues that it was admissible on that basis, a closer examination of the `intent exception' reveals that it, *269 too, is inapplicable because appellant's intent was not admissible. Criminal intent can be inferred from the manner in which Diana Lynn Holland was killed and her body disposed of, especially in the absence of any claim or glimmer of evidence that the killing was inadvertent or in self-defense. `Where the requisite intent is presumed or inferred from proof of the criminal act itself or where the intent of the defendant is not in issue, evidence of other crimes is not admissible.' Wharton's Criminal Evidence § 245 at 560 (C. Torcia 13th ed.1972).

"`When the element the State bears the burden of proof on can "be inferred from the act itself," the State may not use extraneous offenses as circumstantial evidence of that element in its case in chief.' Ruiz v. State, 579 S.W.2d 206, 209 (Tex.Cr.App.1979). `[W]hen the act charged is not equivocal, but the criminal intent is a necessary conclusion from the act, this theory of other acts as showing intent may not be availed of.' McCormick on Evidence § 190 at 450 n. 42 (E. Cleary 2d ed. 1972) `The peculiarity of intent, as a factum probandum, is that an act is assumed as done by the defendant, and the issue is as to the kind of state of mind accompanying it.' 2 Wigmore on Evidence § 300 at 238 (Chadbourn rev.1979)."
440 So.2d at 1159. (Emphasis added.)
Hunter was charged with attempted murder and first-degree robbery. Gamble was the victim of both offenses. During the trial and over defense counsel's objection, the prosecution was permitted to elicit testimony from Crawford concerning the cemetery robbery that occurred two and one-half weeks before the charged incident. The trial court gave a limiting instruction to the jury, stating that the purpose of the testimony relating to the cemetery robbery was to show possible intentnot to prove Hunter's guilt or innocence. (R. 77.)
The State contends that Crawford's testimony was admissible to prove intent. However, there was no genuine dispute regarding the issue of criminal intent in the assault and robbery of Gamble. The defense did not claim that the offense occurred as a result of an accident, a misunderstanding, or a heated confrontation. In this case, Gamble testified that, while he was sitting alone in a car, Hunter ran toward him, that he hit him over the head several times with a gun, that he fired a gun toward the car Gamble was in, and that he threatened to kill him and demanded that Gamble give him money. See Kuenzel v. State, 577 So.2d 474, 516 (Ala. Crim.App.1990) (holding that, under certain circumstances, the use of a deadly weapon gives rise to the legal presumption of malice and intent). "Either appellant committed the act, in which case his intent was evident from its brutality, or he did not commit the act, in which case his intent as shown by the earlier [collateral act] was immaterial." Brewer v. State, 440 So.2d at 1160.
Given that intent may be inferred from the nature of the assault and the robbery and that the circumstances surrounding the collateral robbery were substantially different from the present case, evidence of the collateral robbery in the cemetery was not admissible as tending to prove intent. The prejudicial impact of Crawford's testimony of the collateral robbery, particularly in light of the fact that the testimony was unnecessary, substantially outweighed any probative value. Thus, the trial court erred in allowing the State to elicit testimony from Crawford relating to a collateral robbery.
In holding that the trial court erred in admitting testimony relating to the cemetery *270 robbery, we do not wish to be understood as holding as a general proposition that collateral bad act evidence can never be admitted into evidence. However, in this particular case, the alleged robbery in the cemetery did not logically lead to an inference that Hunter, because he had allegedly committed the prior robbery, had the prerequisite intent to commit the nowcharged crimes at the time they were committed. Cf. Ex parte Smith, 694 So.2d 1261 (Ala.1996), citing Ex parte Killough, 438 So.2d 333 (Ala.1983).
The dissent argues that the adoption of Rule 404(b), Ala.R.Evid., abrogated prior caselaw that addressed similar evidentiary issues. We acknowledge that Rule 404(b) does establish that prior bad acts can be admissible as a means of proving intent. However, evidence offered pursuant to Rule 404(b) may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, Ala.R.Evid. See Ex parte Baker, 780 So.2d 677 (Ala.2000) (citing prior caselaw and Gamble's Alabama Rules of Evidence, and noting that Rule 404(b) requires that evidence of prior collateral acts be excluded if its probative value is substantially outweighed by its prejudicial effect). Brewer v. State, supra, provides precedent and McElroy's Alabama Evidence provides guidance for our conclusion that the probative value of the collateral evidence in this case was substantially outweighed by the danger of unfair prejudice.
"Whether the improper admission of evidence of collateral bad acts amounts to prejudicial error or harmless error must be decided on the facts of the particular case." R.D.H. v. State, 775 So.2d 248, 254 (Ala.Crim.App.1997); Hobbs v. State, 669 So.2d 1030 (Ala.Crim.App. 1995). The standard for determining whether error is harmless is whether the evidence in error was "harmless beyond a reasonable doubt." Schaut v. State, 551 So.2d 1135, 1137 (Ala.Crim.App.1989), citing Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We cannot conclude that the unfair prejudice resulting from the admission of this evidence was cured by the trial court's limiting instructions to the jury that it was to consider the evidence only on the question of intent. Furthermore, the evidence in this case was not so overwhelming as to render the error harmless. Here, Gamble was the only witness to testify regarding the incident and the only witness who identified Hunter as the man who had assaulted and robbed him. We cannot find that the introduction of evidence of Hunter's prior bad act was harmless error beyond a reasonable doubt.
Based on the foregoing, we conclude that evidence of the cemetery robbery was inflammatory and its prejudicial impact substantially outweighed any probative value, that its admission constituted reversible error, and that Hunter is entitled to a new trial.
Because we must reverse on this issue, we will not address Hunter's challenge to the sufficiency of the evidence to sustain his convictions. However, because Hunter's challenge to the witness-identification issue may arise on any retrial of this case, we will address that issue.

II.
Hunter maintains that Gamble's pretrial identification of him in a photographic lineup was unduly suggestive because, he says, he was the only person in the photographic array wearing a striped shirt, and because the background of his photograph was a lighter gray than three of the photographs in the lineup. There were six photographs in the array. Hunter further argues that Gamble's in-court identification was tainted by the pretrial photographic lineup.
*271 In Blackmon v. State, 487 So.2d 1022 (Ala.Crim.App.1986), this Court stated:
"`"[T]he required inquiry is two-pronged. The first question is whether the initial identification procedure was `unnecessarily' [Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)] or `impermissibly' [Simmons v. U.S., 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)] suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to be have been `unnecessarily,' or `impermissibly' suggestive was so `conducive to irreparable mistaken identification' [Stovall] or had such a tendency `to give rise to a very substantial likelihood of irreparable misidentification' [Simmons] that allowing the witness to make an in-court identification would be a denial of due process. United States ex rel Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir.1970)."'"
487 So.2d at 1025.
In Ex parte Johnson, 620 So.2d 709 (Ala.), on remand, 620 So.2d 714 (Ala.Crim. App.), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993), the Alabama Supreme Court stated:
"Pretrial identifications are to be set aside on grounds of prejudice only if the pretrial identification procedure is so suggestive as to give rise to a substantial likelihood of misidentification. Ex parte Stout, 547 So.2d 901 (Ala.1989). The totality of the circumstances surrounding the out-of-court identification need be analyzed only when the pretrial procedures used appear to have been unnecessarily or impermissibly suggestive. Stout."

620 So.2d at 712.
"The array may be `necessarily suggestive,' but still not be `unnecessarily suggestive.'" Blackmon v. State, 487 So.2d 1022, 1025 (Ala.Crim.App.1986), citing Caver v. State, 537 F.2d 1333, 1336 (5th Cir.1976), cert. denied, 430 U.S. 910, 97 S.Ct. 1183, 51 L.Ed.2d 587 (1977). See also Burgess v. State, [Ms. CR-94-0475, December 18, 1998] ___ So.2d ___ (Ala. Crim.App.1998), reversed in part on other grounds, [Ms. 1980810, July 21, 2000] ___ So.2d ___ (Ala.2000) (although the defendant was the only person wearing a jacket and was the only person standing before a blank wall, the photographic array was not unduly suggestive); Childers v. State, 339 So.2d 597, 599-600 (Ala.Crim.App.), cert. denied, 339 So.2d 601 (Ala.1976) (fact that a witness identified suspect in robbery of convenience store as wearing a red sleeveless shirt and defendant was the only participant in lineup wearing a red sleeveless shirt did not lead to likelihood of misidentification). Cf. Raines v. State, 428 So.2d 206 (Ala.Crim.App.1983) (where a witness testified that she did not notice that the background of the defendant's photograph was lighter than that of other photographs, the court held that the photographic lineup was not unduly suggestive).
During a pretrial hearing, Rick Miller, an investigator for the Birmingham Police Department, testified that, on January 13, 1997six days after the robbery he showed Gamble a computerized photographic lineup of Hunter and five other men whose characteristics were similar to those of Hunter. Miller stated that, although three of the photographs had lighter gray backgrounds, all six photographs had gray backgrounds. Miller further stated that Gamble picked Hunter out of the lineup. Defense counsel argued that, because the background of Hunter's photograph and that of two other photographs was a lighter gray than the other three photographs, and because Hunter was the only person wearing a striped shirt, the pretrial identification should have been suppressed. After reviewing the photographic *272 lineup, the trial court denied the motion.
We have reviewed the six photographs in the lineup, and we conclude that the lineup was not unduly suggestive. In this case, the photographs depicted men who possessed similar characteristics, and, in three of the photographs, including the appellant's photograph, the backgrounds were a lighter gray. Thus, we conclude that the procedures used were not unnecessarily or impermissibly suggestive in that they did not create a substantial risk of misidentification.
Furthermore, the in-court identification of Hunter as the perpetrator of the robbery and the assault was not tainted by the pretrial procedure. At trial, Gamble identified Hunter and testified that he saw Hunter as he ran toward him, that Hunter beat him over the head with a pistol, and that Hunter took his money. Based on the foregoing, we conclude that Gamble's in-court identification of Hunter was based on his eyewitness observations during the robbery; therefore, that identification was reliable and independent of any pretrial identification.
Thus, the trial court properly admitted the identification testimony.
Hunter's convictions are due to be reversed for the reasons stated in Part I of this opinion, and the cause is remanded for further proceedings.
APPLICATION OVERRULED; OPINION OF SEPTEMBER 29, 2000, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
McMILLAN and COBB, JJ., concur; LONG, P.J., adheres to original special concurrence in the result; BASCHAB, J., adheres to original dissent.
LONG, Presiding Judge (concurring as to result).
I agree that the trial court erred in admitting the evidence concerning the cemetery robbery. Here, the prior crime was apparently unconnected to the now-charged crime, see, e.g., Ex parte Killough, 438 So.2d 333, 335-36 (Ala.1983); involved facts insufficiently similar to those of the present crime, see, e.g., Pack v. State, 461 So.2d 910, 913 (Ala.Crim.App. 1984); was committed against a third party with no connection or relevant similarity to the victim in the present case, see, e.g., Aaron v. State, 596 So.2d 29, 30-31 (Ala. Crim.App.1991); and did not have the logical tendency to lead to the inference that Hunter, because he committed the prior act, had the prerequisite intent at the time the now-charged crime was committed, see Ex parte Killough, supra. Also, because of the lack of similarity between the facts of the prior crime and those of the present crime, the evidence concerning the cemetery robbery could not be admitted under the "identity" exception to the general rule excluding prior bad acts. See, e.g., Stegall v. State, 628 So.2d 1009, 1012 (Ala.Crim. App.1993). However, because I disagree with the majority's reliance on Brewer v. State, 440 So.2d 1155 (Ala.Crim.App.1983), to reach its holding, I concur in only the result.
BASCHAB, JUDGE, dissenting.
The majority's reliance on McElroy's Alabama Evidence and Brewer v. State, 440 So.2d 1155 (Ala.Crim.App.1983), which preceded the adoption of the Alabama Rules of Evidence, is misplaced. On January 1, 1996, the Alabama Rules of Evidence became effective, and the appellant's trial began on September 1, 1998. Rule 404(b), Ala.R.Evid., which is quoted below, specifically provides that evidence about prior bad acts is admissible to establish *273 intent, and it does not incorporate the restrictions set forth in McElroy's or Brewer.
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."
Rule 404(b), Ala.R.Evid. (emphasis added). The Advisory Committee's Notes to Rule 404(b), Ala.R.Evid., state:
"The general rule excluding character evidence does not bar evidence of specific acts when that evidence is offered for some purpose other than the impermissible one of proving action in conformity with a particular character. While section (b) does not purport to provide an exhaustive listing of proper purposes, it states that proper purposes may include proving such things as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Admitting evidence of specific conduct for a limited purpose, other than to prove character and conformity therewith, is consistent with preexisting Alabama law in both criminal and civil cases.... Ex parte Cofer, 440 So.2d 1121 (Ala.1983) (dealing with intent as a purpose for admitting evidence of the accused's collateral crimes)...."
(First emphasis original; second emphasis added; some citations omitted.) See also Gamble v. State, 791 So.2d 409 (Ala.Crim. App.2000); Perkins v. State, [Ms. CR-93-1931, November 19, 1999] ___ So.2d ___ (Ala.Crim.App.1999); Presley v. State, 770 So.2d 104 (Ala.Crim.App.1999); Hayes v. State, 717 So.2d 30, 36-37 (Ala.Crim.App. 1997); Ex parte Stripling, 694 So.2d 1281 (Ala.1997). Therefore, under Rule 404(b), Ala.R.Evid., the State properly elicited testimony about the prior robbery to show the appellant's intent in this case. Furthermore, the trial court instructed the jury that the testimony about the prior robbery could be relevant for the limited purpose of showing the appellant's intent, but was not relevant to show his guilt or innocence. Because I believe the trial court properly admitted testimony about the prior robbery, I must respectfully dissent.
NOTES
[1] The record does not indicate Derrick's last name.
[2] The record does not indicate whether the front passenger's side door was open or whether Hunter reached into the car through the front passenger side window.