Johnny Otis Crawford, Jr. was indicted for the first degree robbery of three separate fast food restaurants. The offenses were joined for trial, and the jury found the appellant "guilty as charged in the indictment" in each case. The appellant was sentenced as a habitual felony offender to life imprisonment without parole.
At 9:00 p.m. on March 28, 1984, Sharon Jackson was working at Jacks Hamburgers at 8th Avenue West in Birmingham, Alabama. She was the only employee working the counter but Joe Richardson and Doris Hines were working behind her where the food was being prepared. *Page 393 
A man with a small barrel gun approached the cash register. He pointed the gun at Jackson and told her to put all of the money in a bag. Jackson took the money from the cash registers, put it in a bag and gave it to the armed man.
At some point, Doris Hines noticed the man and started running. The man cocked the gun. Jackson told him not to shoot her and he said he would not. The man then left and ran away.
Jackson said the man was wearing a yellow windbreaker, a white shirt with a red and blue stripe, dark pants, and a baseball cap. He had a moustache, was about 5'5" tall, and weighed about 140 pounds. She identified the appellant as the man who robbed her.
Sometime shortly after the robbery, she was shown a group of pictures by the police. She saw the man who robbed her in these pictures.
Clarence Mitchell of the Birmingham Police Department was assigned to this robbery case. The day after the robbery he showed Sharon Jackson a group of six photographs. All of the men were black males with beards and moustaches. Jackson picked out the appellant's photograph.
On April 3, 1984, Joe Richardson attended a police line-up of six black males. Four of the subjects were 5'8" tall and the other two were 5'9" and 5'10' tall. The weights of the subjects only differed by 18 pounds. Richardson picked the appellant out of this lineup and identified him as the man who robbed Jacks on that night. Richardson also identified the appellant at trial. He said the appellant had a beard and a moustache on the night of the robbery.
Tanya Law was working alone at the cash register at the Burger King on Airport Highway in Birmingham on the evening of March 28, 1984. At approximately 5:20 p.m., a man walked in and came to the register. Law asked if she could help the man and he pointed a gun at her and told her to put the money in a bag. Law put the money from the register into a bag and the appellant left and ran across the parking lot.
She stated the man had on a biege jacket, dark pants and a painter's hat. Law testified that the man was not clean shaven, was about 5'6" or 5'7" tall and weighed between 145 and 160 pounds.
Law identified the appellant as the man who robbed her on this date. Law also picked the appellant out of the same line-up that Richardson viewed.
Mildretta Lewis was working the cash register at Mrs. Winner's Chicken and Biscuits at 26th Avenue and 35th Street in Birmingham shortly before 5:00 p.m. on March 28, 1984. A man came in and milled around the condiment stand until some customers left. Lewis asked if she could help the man. He pointed a small gun at her and told her to put the money in a bag. Lewis then emptied both registers and put the money in a bag. After the man got the bag, he left.
Lewis stated that the man had on a white shirt with blue on the sleeves, a baseball cap, dark pants and tennis shoes. The man was approximately 5'5" tall, weighed about 145 pounds, and had a beard and a moustache.
A short while after the robbery, the police brought a suspect to Mrs. Winner's for Lewis to look at. This suspect was not the man who robbed her.
Lewis identified the appellant at trial as the man who robbed Mrs. Winner's that night. She also picked the appellant out of the line-up.
Two of the employees at Mrs. Winner's that night testified for the defense. Both stated that they could not identify the appellant as the man they saw that night. However, both women stated that they would not recognize the man if they saw him.
Another witness for the defense, Mae Irvin, stated she was in the parking lot of the Burger King during the time this robbery took place. She said the appellant does not look like the man she saw leave the Burger King but she does not know *Page 394 
what the man looks like. She just glanced at him.
 I
The appellant contends the trial court erred by allowing the out-of-court identifications of this appellant into evidence. He alleges that the live line-up and photographic array were unnecessarily suggestive. From our examination of the record, we find nothing to support this allegation. The State's witnesses identified the appellant at trial based on their observations during the robberies.
 "Even had the confrontation procedures been suggestive, which we hold they were not, reliability remains the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite
[432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)], supra. The United States Supreme Court has set out the following five factors to be considered in determining reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. at 114, 97 S.Ct. at 2253; Neil v. Biggers, 409 U.S. [188] at 199-200, 93 S.Ct. [375] at 382 [34 L.Ed.2d 401 (1972)]. Applying these five criteria to the case before us, we conclude that the identification testimony presented to the jury was proper."
Flowers v. State, 402 So.2d 1088, 1092 (Ala.Cr.App.), cert. denied, 402 So.2d 1094 (Ala. 1981).
There is no basis of error to reversal on this issue.
 II
The appellant contends the trial judge erred by failing to give his requested jury charge number 9. That charge states: "It is the Defendant's theory of the case that the witnesses have mistakenly identified him as being the robber in case numbers CC 84-311, CC 84-2196, and CC 84-2202." (R. 442)
While a defendant is generally entitled to have his theory of the case presented to the jury, Strauss v. United States,376 F.2d 416 (5th Cir. 1967), an instruction on that theory must contain a statement that the theory is based on the evidence at trial. Bell v. State, 473 So.2d 622 (Ala.Cr.App.), cert. denied, 473 So.2d 622 (Ala. 1985).
As can be seen from the charge quoted above, there was no statement included that the appellant's theory of the case was based on this evidence. Therefore, the charge was properly refused. Bell, supra.
 III
The appellant contends these three cases were improperly joined for trial. Rule 15.3 (a), Alabama Temporary Rules of Criminal Procedure, provides that two or more offenses may be joined if the offenses "(i) are of the same or similar character; or (ii) are based on the same conduct or are otherwise connected in their commission; or (iii) are alleged to have been part of a common scheme or plan."
The three offenses in this case are certainly of the same or similar character. All three robberies occurred at fast food restaurants in Birmingham, Alabama. In each instance, the robber had a gun and told the victims to put all of the money in a bag. The robber, in all three cases, had on a hat, had facial hair, wore some similar clothing, and was of somewhat similar height and build.
Further, it could be maintained that the three offenses were part of a common scheme, design or plan. The robberies were committed at three fast food restaurants on the same day within a matter of a few hours. Certainly, the case at bar is a "classic case" for joinder. See Butler v. State, 439 So.2d 210
(Ala.Cr.App. 1983).
Although the appellant admits that joinder was permissible in this instance, he contends that he was prejudiced by this joinder. He states that the jury confused the cases and used the evidence presented *Page 395 
at trial cumulatively to convict the appellant in each case.
We find no merit to this argument. Each of the victims in the three cases positively identified the appellant at trial as the man who robbed them.
Based on this evidence, the appellant would have been convicted in each case even if three separate trials had been conducted. Therefore, the fact that the three offenses were joined in one trial does not prejudice this appellant in any significant manner.
Moreover, as the State submits in its brief, even had separate trials been held, evidence of two of the robberies might well have been admissible in each of the trials as evidence showing a common plan, scheme or design. C. Gamble,McElroy's Alabama Evidence, § 69.01 (6) (3rd ed. 1977).
The appellant was not prejudiced by the proper joinder of these three offenses. His motion to sever was properly denied by the trial judge.
 IV
During the examination by the prosecutor of Tanya Law, the following took place:
"Q How much in your opinion do I weigh?
 "MR. TURBERVILLE: I object, Your Honor. That is irrelevant, immaterial. Her testimony was at first he was 145, 160, and then she said he was 160.
 "MR. NAIL: I object to him editorializing, Your Honor.
 "MR. TURBERVILLE: How much she thinks Mr. Nail weighs is totally irrelevant and immaterial.
"THE COURT: Overruled.
"Q How much in your opinion do I weigh?
"A About 180, 190.
"Q How tall am I?
"A About 5'8" or 5'9".
"Q Would it surprise you to know I'm 5'11""?
"A No. I can't tell you.
 "Q Did you have a stop watch on during the time this robbery was going on?
"A Did I have what?
"Q A stop watch. Do you know what a stop watch is?
"A No, I don't.
 "Q What they use for track to time how fast the runners run 40 yards or 40 meters, hundred yard dash?
"A No.
 "MR. TURBERVILLE: Your Honor, I object. Mr. Nail throughout asked her to guess how much he weighed and we haven't heard — she said 180 or 190. He hasn't indicated that's accurate or not.
 "THE COURT: Well, I don't think he's on the stand yet.
 "MR. TURBERVILLE: Well, Your Honor, he was using himself as an example.
 "THE COURT: I don't think he can testify unless I put him under oath.
"MR. TURBERVILLE: Well, he told her how tall he was.
 "MR. NAIL: He can put me on the stand if he wants to, Your Honor.
"THE COURT: Let's go on with the case." (R. 210-211)
The appellant asserts that this portion of the transcript concerning the prosecutor's height and weight was an in-court experiment and the failure of the prosecutor to reveal the results of that experiment (his weight) is reversible error. We find no merit to this argument. The scope and extent of in-court experiments are within the sound discretion of the trial court. McCain v. State, 46 Ala. App. 627, 247 So.2d 383
(1971). We find no abuse of discretion in this instance.
The so-called experiment was conducted to test the witness's ability to estimate a person's height and weight. The jury was able to observe the prosecutor and could make comparisons of the witness's estimates with their own. The appellant was not prejudiced by the prosecutor's failure to reveal his weight.
The appellant also states that this alleged experiment was not conducted under *Page 396 
"circumstances substantially to those attending the alleged occurrence." (Appellant's brief, p. 31) He cites C. Gamble,McElroy's Alabama Evidence, § 81.01 (4) (3rd Ed. 1977) for this proposition. We find this argument to be without merit for two reasons.
First, the section cited by the appellant deals with experiments "carried out before trial and the results of which are offered into evidence through the testimony of witnesses who either experienced or observed them." (Emphasis added.)McElroy's, supra, at 81.01 (1). Therefore, this section is clearly inapplicable to the in-court examination which we have discussed.
Secondly, it would be impossible to recreate the conditions which existed when the witness observed the appellant during the robbery. The fear one experiences, when looking at the barrel of a gun pointed at them by a robber, is a condition which cannot be simulated. Therefore, there was no error committed at trial in this instance.
 V
The Birmingham Police Department received three telephone calls from a person claiming to have committed the offenses involved in this case. The caller related some specific facts concerning the robberies which would not have been of common knowledge. These conversations were preserved on tape. One of the tapes was played twice for the jury. The other two tapes were destroyed.
The appellant contends that the destruction of those tapes was in violation of Brady v. Maryland, 373 U.S. 83,87 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
"Essential to a claim under Brady is a showing that (1) the government suppressed or withheld requested evidence that was both (2) favorable and (3) material to the defense. Moore v.Illinois, 408 U.S. 786, 794-95, 92 S.Ct. 2562, 2568-69,33 L.Ed.2d 706 (1972)." United States v. Walker, 720 F.2d 1527
(11th Cir. 1983), cert. denied, 465 U.S. 1108, 104 S.Ct. 1614,80 L.Ed.2d 143 (1984).
Certainly, evidence was suppressed by the destruction of the two tapes. Although the substance of these two tapes was not revealed in the record, we can assume, for purposes of our discussion, that they were favorable to this appellant.
"[T]he standard of materiality is whether the suppressed evidence might have affected the outcome of the trial. [UnitedStates v.] Agurs, 427 U.S. [97] at 104-06 [96 S.Ct. 2392 at 2397-98, 49 L.Ed.2d 342 (1976)]; United States v. Blasco,702 F.2d 1315, 1327 (11th Cir. 1983)." Walker, supra at 1535. (Footnote omitted.)
In the case at bar, we find that the suppression of the two tapes did not affect the outcome of the trial.
Officer Johnson, who testified as to the existence of those tapes, stated that calls recorded on all three tapes were made by someone who claimed to have committed the three robberies at issue. The jury was allowed to hear one of the tapes. Johnson testified that he told defense counsel that the voice on the tape was not that of the appellant.
Clearly, the jury was aware of the existence of the two tapes and the information contained on them. The only thing denied the jury was an opportunity to listen to the voice on the tape. Since the jury did not hear the appellant speak at trial, we fail to see how the voice on the two destroyed tapes would have been beneficial to this appellant at trial. The two tapes that were destroyed would merely have been cumulative of the tape which was heard by the jury and the testimony of Officer Johnson.
Therefore, since all relevant information concerning the two destroyed tapes was brought to the jury's attention, we conclude that the destruction of those tapes was not sufficiently material so as to require a new trial. See Walker, supra.
 VI
During defense counsel's cross-examination of Officer Mitchell, the following occurred: *Page 397 
 "Q Where did you get the pictures from that you took out to show to Ms. Jackson?
 "A We have pictures that are made up of suspects who have robbed before.
"Q People that are suspected of robbery?
"A Who have been convicted.
 "MR. TURBERVILLE: Your Honor, I don't think that was —
 "THE COURT: I thought you asked him where he got them.
 "MR. TURBERVILLE: I asked him where he got them, from the police department or where did he get them. I have to move for a mistrial. I don't believe that was responsive.
 "THE COURT: Overruled. I think you asked for it. Go ahead." (R. 270-71)
Defense counsel now contends that his motion for a mistrial was due to be granted because Officer Mitchell's answers to his questions constituted inadmissible evidence of other crimes which had been committed by this appellant. We find that the motion for a mistrial was properly denied for two reasons.
First of all, defense counsel's objection to Officer Mitchell's answers at trial is different from the objection he raises on appeal. At trial, defense counsel objected to the answers as non-responsive. He did not object to the answers on the basis that they were evidence of prior convictions.
"Specific grounds of objection waive all grounds not specified, and the trial court will not be put in error on grounds not assigned. Rogers v. State, 53 Ala. App. 573,302 So.2d 547 (1974)." Hargrove v. State, 344 So.2d 823
(Ala.Cr.App.), cert. denied, 344 So.2d 826 (Ala. 1977). Therefore, due to defense counsel's failure to object at trial on the grounds he now asserts on appeal, this issue is not properly preserved for our review.
Secondly, we must agree with the trial judge that defense counsel got what he "asked for." "A defendant cannot by his own voluntary conduct invite error and then seek to profit thereby.Boutwell v. State, 279 Ala. 176, 183 So.2d 774 (1966); Aldridgev. State, 278 Ala. 470, 179 So.2d 51 (1965); Buford v. State,214 Ala. 457, 108 So. 74 (1926); Barber v. State, 151 Ala. 56,43 So. 808 (1907)." Murrell v. State, 377 So.2d 1102
(Ala.Cr.App.), cert. denied, 377 So.2d 1108 (Ala. 1979).
There is no error to reversal on this issue.
 VII
The appellant claims he was denied a fair trial because the prosecutor used his first three strikes to exclude blacks from the jury.
 "In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes."
Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 837,13 L.Ed.2d 759 (1965).
Our examination of the record leads us to conclude that the appellant has not met his burden of proof on this issue. Defense counsel offered no evidence that the prosecutor used his strikes for reasons other than to obtain a fair and impartial jury. The sole fact that the prosecutor used his first three strikes to exclude blacks from the venire does not constitute proof that blacks were systematically excluded from the jury in this case. McCray v. State, 395 So.2d 1057
(Ala.Cr.App. 1980), cert. denied, 395 So.2d 1062 (Ala. 1981). "Purposeful discrimination may not be assumed or merely asserted. It must be proved." *Page 398 Butler v. State, 285 Ala. 387, 232 So.2d 631 (1970); Clisby v.State, [Ms. 6 Div. 792, November 26, 1985] (Ala.Cr.App. 1985).
Furthermore, the appellant did not offer any proof of continued or systematic exclusion of blacks from juries in Jefferson County by the district attorney's office's use of their peremptory strikes. May v. State, 485 So.2d 1221
(Ala.Cr.App. 1986). The appellant has failed to meet his burden of proof on this issue. See United States v. Brooks,670 F.2d 148 (11th Cir. 1982), cert. denied, 457 U.S. 1124,102 S.Ct. 2943, 73 L.Ed.2d 1339 (1982).
We find no error in this record.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.