The appellant, Charles Erastis Pigg, was convicted of one count of first-degree robbery, a violation of § 13A-8-41, Ala. Code 1975. He was sentenced as an habitual offender to serve a term of life imprisonment without the possibility of parole. Additionally, the court ordered Pigg to pay restitution in the amount of $2497, less any moneys recovered immediately following the crime. This appeal followed.
The evidence tended to establish that on February 4, 2002, a white male entered a bank on the "Beltline" Highway in Decatur. He placed a handwritten note on the teller's counter demanding money. According to the teller, the note stated: "Hand me the money or I will kill myself and everyone here." The teller proceeded to hand over a large sum of money, and the man left the bank. *Page 1003 
Bank personnel notified the police of the robbery. Upon arrival, the police began a search of the area. They discovered a trail of currency leading from the bank to the Knight's Inn, a motel across the street from the bank. They also found a pair of sunglasses and a baseball cap like the one witnesses had described the robber wearing. Further investigation revealed that Pigg, who matched the general description of the bank robber, was registered at the motel — using the name "Charlie McCroy." Pigg had been registered at the hotel for approximately 2 months under the name of "Charlie McCroy," paying weekly for his lodging. He had gotten two weeks behind in his payments; however, Pigg paid his entire bill in the amount of $385.06 in cash on February 4, 2002 — the day of the robbery.
During a search of Pigg's motel room, evidence technicians found a piece of paper under the telephone, folded into a small square. The piece of paper read "I'm ready to kill all, even myself. No die packs or S/alarm. If you're ready to gamble, obviously so am I." The hotel room was dusted for fingerprints and the outside garbage was searched for other relevant evidence. Investigators took the evidence that was found to the police station for proper chain-of-custody processing and obtained a warrant for the arrest of Charles Erastis Pigg, alias Charles McCroy. A National Crime Information Center alert was entered and Pigg was eventually taken into custody in Maywood, Missouri; he was extradited to Alabama for prosecution.
 I.
On appeal, Pigg argues that the State's evidence was insufficient to convict him of first-degree robbery. Specifically he contends that, in order to sustain his conviction for first-degree robbery under § 13A-8-41, Ala. Code 1975, the State was required to prove that he either: (1) used a deadly weapon to carry out the robbery; or (2) represented in some way that he was armed with a deadly weapon when he committed the robbery.
We note that the record before us contains no motion for judgment of acquittal, nor does it contain a motion for a new trial alleging that the verdict was contrary to the weight or sufficiency of the evidence. "Review on appeal is limited to review of questions properly and timely raised at trial."Newsome v. State, 570 So.2d 703, 716 (Ala.Crim.App. 1989).
Even if Pigg had properly preserved this issue for appellate review, his argument is without merit. In Herndon v. State,563 So.2d 1065, 1068 (Ala. 1990), recognizing that an unloaded gun is a "deadly weapon" for purposes of § 13A-8-41, the Alabama Supreme Court stated that "§ 13A-8-41(b) relates to those factual situations where any person present reasonably believes that the robber is using a deadly weapon or dangerous instrument, not whether the robber is, in fact, `armed with a deadly weapon.'" "In a prosecution for first-degree robbery, the robbery victim does not actually have to see a weapon to establish the element of force; his or her reasonable belief that the robber is armed is sufficient." Rice v. State, 620 So.2d 140, 141
(Ala.Crim.App. 1993) (quoted with approval in Stallings v.State, 793 So.2d 867, 868 (Ala.Crim.App. 2000), and Porter v.State, 666 So.2d 106, 108 (Ala.Crim.App. 1995)). See also §13A-8-41(b), Ala. Code 1975. Based on the evidence set out above, the State produced sufficient evidence from which the jury could, by fair inference, find beyond a reasonable doubt that when the bank teller read the note containing the word "kill," she could have reasonably believed that Pigg had the necessary weapon to carry out his threats. Ample evidence was presented *Page 1004 
to support Pigg's conviction for first-degree robbery. Thus, no basis for reversal exists.
 II.
Pigg also argues that his sentence of life imprisonment without the possibility of parole is illegal. Specifically, he contends that the State failed to show that his two prior convictions for bank robbery would have been Class A felonies had they been committed in Alabama. Thus, he claims, his sentence is thereby taken outside of the mandatory sentencing aspects of the Habitual Felony Offender Act ("the HFOA"), specifically § 13A-5-9(c)(3), Ala. Code 1975.
As long as there is a state counterpart for a federal crime, the federal offense may be used for purposes of the HFOA. SeeCarter v. State, 420 So.2d 292 (Ala.Crim.App. 1982). "All prior felony convictions may be considered in connection with the Habitual Felony Offender Act, regardless of what their origin may be. Watson v. State, 392 So.2d 1274 (Ala.Crim.App. 1980),cert. denied, 392 So.2d 1280 (Ala. 1981)." Long v. State,446 So.2d 658, 660 (Ala.Crim.App. 1983).
At trial, evidence of 15 prior offenses was introduced; including two prior federal felony convictions for bank robbery, in violation of 18 U.S.C. § 2113(a), in the State of South Carolina. Additionally, the State's motion to sentence Pigg as a habitual felony offender contained a list of approximately 13 other felony convictions,[1] together with certified copies of all of Pigg's convictions. The indictment charging Pigg with bank robbery provided, in pertinent part, as follows:
 "On or about April 26, 1991, in the District of South Carolina, the defendant, [Pigg], by force, violence and intimidation did take from the person or presence of another money belonging to and in the care, custody, control, management and possession of the Republic National Bank, Columbia, South Carolina, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation;
 "All in violation of Title 18, United States Code, Section 2113(a)."
(C. 47); and
 "On or about April 19, 1991, in the District of South Carolina, the defendant, [Pigg], by force, violence and intimidation did take from the person or presence of another money belonging to and in the care, custody, control, management and possession of the South Carolina National Bank, Columbia, South Carolina, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation;
 "All in violation of Title 18, United States Code, Section 2113(a)."
(C. 48.)
Although both the trial court and the prosecutor appeared to be under the impression that the bank-robbery convictions constituted Class A felonies under Alabama law, the language set out in the indictments indicates that Pigg was not charged with the commission of Class A felonies under Alabama law. First-degree robbery, a Class A felony, is defined in § 13A-8-41, Ala. Code 1975, which provides:
 "(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he: *Page 1005 
 "(1) Is armed with a deadly weapon or dangerous instrument; or
(2) Causes serious physical injury to another."
Section 13A-8-43, Ala. Code 1975, provides, in pertinent part:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "(b) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
As seen above, neither of the federal bank-robbery indictments charged that during the commission of the two bank robberies either that Pigg was armed with a deadly weapon or dangerous instrument, or that Pigg caused serious physical injury to another. Thus, these convictions did not constitute Class A felonies in Alabama. Instead, under Alabama law, the indictments charged Pigg with third-degree robbery, a Class C felony. Accordingly, the trial court erroneously concluded that it had no choice but to sentence Pigg to life imprisonment without the possibility of parole. Therefore, because none of Pigg's prior convictions were for Class A felonies, the trial court had the discretion to sentence Pigg to either life imprisonment or to life imprisonment without the possibility of parole. See §13A-5-9(c)(3), Ala. Code 1975. Thus, this case must be remanded for the trial court to resentence Pigg.
For the reasons stated above, this case is remanded for the trial court to resentence Pigg. Our remand should not be interpreted to prohibit the trial court from again sentencing Pigg to life imprisonment without the possibility of parole, if it determines that such a sentence is warranted. The trial court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 56 days after the release of this opinion. The return to remand shall include the trial court's new sentencing order as well as a transcript of the sentencing hearing.
REMANDED WITH DIRECTIONS.*
McMILLAN, P.J., and COBB and SHAW, JJ., concur.
BASCHAB, J., concurs in the result.
[1] None of these convictions were for Class A felonies. See §13A-5-9(c)(3), Ala. Code 1975.
* Note from the reporter of decisions: On September 16, 2005, on return to remand, the Court of Criminal Appeals affirmed, without opinion.