The appellant, Valrise Denise Bendolph, was convicted of two counts of first-degree robbery, violations of § 13A-8-41(a)(1), Ala. Code 1975. The trial court sentenced her, as a habitual offender, to imprisonment for life without the possibility of parole. See § 13A-5-9(c)(4), Ala. Code 1975. The appellant filed a motion for a new trial, which the trial court denied after conducting a hearing. This appeal followed.
The State presented evidence that, on the afternoon of April 25, 2005, Cindy Williamson and Kandyce Hall were working as tellers at the University of Alabama at Birmingham ("UAB") branch of South-Trust Bank and that Hall's station was next to Williamson's station. Williamson testified that a black woman entered the bank and stood at a table in the front of the bank where customers fill out deposit or withdrawal slips; that the woman stood there for a minute or two and wrote some-thing; that the woman approached her with a piece of paper that said, "`[T]his is a robbery,'" "`there is a gun in this bag,'" and something to the effect of "`I need this note back'"; that the woman took a paper bag out of her purse and put it on the counter; that she gave the woman the money from her top drawer and then bundled money from her coin vault; that the woman put the money in her purse; that the woman turned, took four or five steps, came back, and pointed at the note; that she slid the note across the counter; and that the woman took the note, put it back in her purse, and left. (R. 97.) She also testified that the woman was between five feet six inches and five feet seven inches tall; that the woman looked like she weighed approximately 150 pounds; and that the woman was wearing a baseball cap and had a bag on her shoulder.
Kandyce Hall testified that, on April 25, 2005, she saw the appellant walk into the bank; that the appellant was between 160 and 180 pounds, had a very dark complexion, was wearing a ball cap, and was carrying a black purse; that the appellant went to the stationery area as if she was going to fill out a form; that, when Williamson finished with the customer she was with at the time, she asked the appellant if she could help her; that the appellant did not say anything; and that, after the appellant left, Williamson said she had been robbed. She also testified that she told officers that the robber was heavyset, but not big. *Page 1051 
Hall further testified that, during the lineup, she picked out the appellant; that the appellant was the woman who came into the bank on April 25, 2005; that she was sure that the person she picked out of the lineup was the person who had been in the bank; and that she saw the appellant's face when she was in the bank.
The State also presented evidence that, around 12:20 p.m. on June 3, 2005, the appellant went into the downtown branch of the SouthTrust Bank; that the appellant went to the area where customers fill out deposit slips and acted like she was filling out something; that the appellant walked up to Elissa Williams' teller window; that the appellant had a large black purse and what looked like a little gun purse; that the appellant took a notebook out of the large black purse and handed Williams a torn piece of paper that said, "`This is a stickup. I have a gun. Give me all your money'"; that Williams could not get her keys to work; and that, after a few minutes, the appellant turned around and left the bank. (R. 48.) Williams testified that she told officers that the robber was approximately five feet six inches tall and weighed approximately 185 pounds.
 I.
The appellant argues that the trial court erroneously found that she was subject to a mandatory term of imprisonment for life without the possibility of parole pursuant to § 13A-5-9(c)(4), Ala. Code 1975. Specifically, she contends that the trial court erroneously treated her prior federal bank robbery conviction as a Class A felony. We addressed a similar situation in Pigg v. State, 925 So.2d 1001, 1004-05
(Ala.Crim.App. 2005), as follows:
 "Pigg also argues that his sentence of life imprisonment without the possibility of parole is illegal. Specifically, he contends that the State failed to show that his two prior convictions for bank robbery would have been Class A felonies had they been committed in Alabama. Thus, he claims, his sentence is thereby taken outside of the mandatory sentencing aspects of the Habitual Felony Offender Act ('the HFOA'), specifically § 13A-5-9(c)(3), Ala. Code 1975.
 "As long as there is a state counterpart for a federal crime, the federal offense may be used for purposes of the HFOA. See Carter v. State, 420 So.2d 292
(Ala.Crim.App. 1982). `All prior felony convictions may be considered in connection with the Habitual Felony Offender Act, regardless of what their origin may be. Watson v. State, 392 So.2d 1274
(Ala.Crim.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981).' Long v. State, 446 So.2d 658, 660 (Ala.Crim.App. 1983).
 "At trial, evidence of 15 prior offenses was introduced; including two prior federal felony convictions for bank robbery, in violation of 18 U.S.C. § 2113(a), in the state of South Carolina. Additionally, the State's motion to sentence Pigg as a habitual felony offender contained a list of approximately 13 other felony convictions, together with certified copies of all of Pigg's convictions. The indictment charging Pigg with bank robbery provided, in pertinent part, as follows:
 "`On or about April 26, 1991, in the District of South Carolina, the defendant, [Pigg], by force, violence and intimidation did take from the person or presence of another money belonging to and in the care, custody, control, management and possession of the Republic National Bank, Columbia, South Carolina, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation;
 "`All in violation of Title 18, United States Code, Section 2113(a).' *Page 1052 
"(C. 47); and
 "`On or about April 19, 1991, in the District of South Carolina, the defendant, [Pigg], by force, violence and intimidation did take from the person or presence of another money belonging to and in the care, custody, control, management and possession of the South Carolina National Bank, Columbia, South Carolina, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation;
 "`All in violation of Title 18, United States Code, Section 2113(a).'
"(C. 48.)
"Although both the trial court and the prosecutor appeared to be under the impression that the bank-robbery convictions constituted Class A felonies under Alabama law, the language set out in the indictments indicates that Pigg was not charged with the commission of Class A felonies under Alabama law. First-degree robbery, a Class A felony, is defined in § 13A-8-41, Ala. Code 1975, which provides:
 "`(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
 "`(1) Is armed with a deadly weapon or dangerous instrument; or
 "`(2) Causes serious physical injury to another.'
 "Section 13A-8-43, Ala. Code 1975, provides, in pertinent part:
 "`(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "`(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "`[(2)] Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.'
 "As seen above, neither of the federal bank-robbery indictments charged that during the commission of the two bank robberies either that Pigg was armed with a deadly weapon or dangerous instrument, or that Pigg caused serious physical injury to another. Thus, these convictions did not constitute Class A felonies in Alabama. Instead, under Alabama law, the indictments charged Pigg with third-degree robbery, a Class C felony. Accordingly, the trial court erroneously concluded that it had no choice but to sentence Pigg to life imprisonment without the possibility of parole. Therefore, because none of Pigg's prior convictions were for Class A felonies, the trial court had the discretion to sentence Pigg to either life imprisonment or to life imprisonment without the possibility of parole. See § 13A-5-9(c)(3), Ala. Code 1975."
(Footnote omitted.)
In this case, the appellant had previously been convicted of the federal offense of bank robbery in the Northern District of Alabama. The State introduced into evidence various documents regarding the federal bank robbery conviction, including the complaint, the affidavit in support of the complaint, and the indictment. The complaint alleged that the appellant
 "did . . . by force and intimidation take from the First Alabama Bank, Home-wood, Alabama, money which was in the care and custody and control of the First Alabama Bank which institution is insured by the Federal Deposit Insurance Corporation." *Page 1053 
(C.R. 122.) The affidavit in support of the complaint alleged:
 "On March 16, 1993, at approximately 11:15 a.m., the FIRST ALABAMA BANK, 298 West Valley Road, Home-wood, Alabama, was robbed by a lone black female. The black female reached over the teller counter, removed U.S. Currency, threatened the teller stating that she had a weapon, and left the bank."
(C.R. 123.) Finally, the indictment in the federal case alleged that the appellant,
 "by force, violence and intimidation, did knowingly and intentionally take, from the person or presence of another, property or a thing of value, namely approximately $1,114.00 in United States currency, belonging to and in the care, custody, control, management, and possession of the First Alabama Bank, 298 West Valley Avenue, Homewood, Alabama, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a)."
(C.R. 125.)
As in Pigg, the allegations in the federal indictment would, at most, constitute third-degree robbery in Alabama. However, in this case, the State also introduced into evidence the affidavit in support of the complaint from the federal case. The facts in the affidavit indicate that, during the robbery, the appellant represented that she was armed with a weapon. "It is well settled that `[i]n determining whether an out-of-state conviction will be used to enhance punishment pursuant to the HFOA, the conduct upon which the foreign conviction is based must be considered and not the foreign jurisdiction's treatment of that conduct.' Daniels v.State, 621 So.2d 335, 342 (Ala.Crim.App. 1992)." Ginnv. State, 894 So.2d 793, 800 (Ala.Crim.App. 2004). Because the appellant represented that she had a weapon at the time of the robbery, under Alabama law, her conduct would have constituted first-degree robbery. See
§ 13A-8-41(a) and (b), Ala. Code 1975. First-degree robbery is a Class A felony. See § 13A-8-41(c), Ala. Code 1975. Accordingly, the trial court properly considered the federal bank robbery conviction as a Class A felony and found that the appellant was subject to mandatory sentences of imprisonment for life without the possibility of parole.
 II.
The appellant also argues that, during her closing argument, the prosecutor improperly appealed to the jurors' personal financial interests and suggested that the appellant "was in essence engaging in the theft of their money not the bank's or an insurance company." (Appellant's brief at p. 32.) Although she objected to the prosecutor's comment and moved for a mistrial, she did not state any specific grounds in support of the objection or motion. Rather, she merely stated, "I think that's improper argument." (R. 222.) Therefore, this argument is not properly before this court. See Steeley v.State, 622 So.2d 421 (Ala.Crim.App. 1992).
 III.
Finally, the appellant argues that the trial court erroneously denied her motion to suppress Kandyce Hall's in-court identification of her because it was based on an unduly suggestive live lineup. Specifically, she contends that there was a disparity between the height and weight of the various subjects in the lineup.
 "`"[T]he required inquiry is two-pronged. The first question is whether the initial identification procedure was `unnecessarily' [Stovall v. Denno, *Page 1054 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)] or `impermissibly' [Simmons v. U.S., 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)] suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to have been `unnecessarily,' or `impermissibly' suggestive was so `conducive to irreparable mistaken identification' [Stovall] or had such a tendency `to give rise to a very substantial likelihood of irreparable misidentification' [Simmons] that allowing the witness to make an in-court identification would be a denial of due process. United States ex rel. Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir. 1970).'" Raines v. State, 428 So.2d 206
(Ala.Cr.App. 1983)."
Blackmon v. State, 487 So.2d 1022, 1025
(Ala.Crim.App. 1986).
 "`The fact, in and of itself, that there was some slight discrepancy in physical appearance among the participants of a lineup does not taint that identification procedure or render it suggestive as a matter of law. Tate v. State, 346 So.2d 515
(Ala.Cr.App. 1977).
 "`"[T]he disparate physical appearances of the lineup participants is not alone sufficient to warrant a finding of suggestiveness. Caver v. Alabama, supra, 537 F.2d 1333 (5 Cir. 1976), cert. denied, 430 U.S. 910, 97 S.Ct. 1183, 51 L.Ed.2d 587
(1977); United States v. Reid, 517 F.2d 953, 965-66, n. 15 (2 Cir. 1975); United States ex rel. Pella v. Reid, 527 F.2d 380, 384 (2 Cir. 1975); United States v. Jackson, 166 U.S.App. D.C. 166, 172, 509 F.2d 499, 505 (1974). `Police stations are not theatrical casting offices; a reasonable effort to harmonize the lineup is normally all that is required.' United States v. Lewis, 547 F.2d 1030, 1035 (8 Cir. 1976), cert. denied, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977)." Swicegood v. Alabama, 577 F.2d 1322, 1327 (5 Cir. 1978).'
 "Lewis v. State, 399 So.2d 907, 909
(Ala.Cr.App. 1981). See also Crawford v. State, 485 So.2d 391 (Ala.Cr.App. 1986); Jones v. State, 439 So.2d 824 (Ala.Cr.App. 1983)."
Nickerson v. State, 539 So.2d 337, 340
(Ala.Crim.App. 1987).
The State presented evidence that the first robbery occurred on April 25, 2005, and that the lineup was conducted on June 7, 2005. During the hearing on the motion to suppress, Hall testified that, while she was working at SouthTrust Bank, someone came in and took some money from one of the other tellers; that, after the robbery, she went to police headquarters to look at photographs to pick out different features of the robber; that, a short time later, law enforcement officers told her to come down and pick somebody out of a lineup; that that "gave [her] a pretty good idea that they had somebody for [her] to pick"; that some of the people in the lineup were "thick," and the appellant was fairly "thick"; and that it was not hard to pick the appellant out of the people who weighed 115 or 120 pounds. (R. 32, 35.) She also testified that, when she was at the lineup, she picked the person who came into the bank on April 25, 2005; that she saw the robber when she walked into the bank; and that she knew the appellant because she had looked her in the face at the bank. Finally, she testified that, after she picked the appellant out of the lineup, the detective told her that the appellant was the person who was on the security camera at the bank.
During the trial, Detective Rowena Richardson testified that there were six people in the live lineup; that the appellant was five feet seven inches tall and weighed approximately 180 pounds; that, *Page 1055 
to her, all of the people in the lineup looked like they were around the same height; and that, based on the photograph from the lineup, there was not a big difference between the subjects in the lineup. She also testified that the subjects in a live lineup are based on who the jail has in custody at that time; that the jail personnel pick out the subjects; and that jail personnel try to select subjects who pretty much look alike.
Finally, we have reviewed the photograph of the lineup in State's Exhibit # 4. The lineup consisted of six black females who were wearing jail clothing. Although two of the subjects appear to be somewhat thinner than the appellant, most of the subjects are not substantially smaller than the appellant. Further, the appearance of the other subjects in the lineup was not completely inconsistent with the victims' descriptions of the robber. Therefore, the lineup in this case was not unnecessarily or impermissibly suggestive. Accordingly, the trial court properly denied the appellant's motion to suppress the appellant's in-court identification.
For the above-stated reasons, we affirm the trial court's judgment.
AFFIRMED.
McMILLAN, SHAW, WISE, and WELCH, JJ., concur.
 *Page 196